UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN E. BARHITE,

        Petitioner,

                               Case No. 5:06-cv-35

v.

                               Hon. Janet T. Neff

PATRICIA L. CARUSO,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

On June 6, 2001, a jury convicted petitioner of two counts of third-degree criminal sexual conduct (CSC), M.C.L. § 750.520d(1)(a) and two counts of fourth-degree CSC, M.C.L. § 750.520e(1)(a). *People v. Barhite*, No. 237890, slip op. at 1 (Mich. App. May 6, 2004); Trial Trans. XII at pp. 7-12.[1] He was sentenced as an habitual offender pursuant to M.C.L. § 769.11, to 12 1/2 to 30 years imprisonment for the third-degree CSC and to 1 to 4 years imprisonment for the fourth-degree CSC convictions. *Barhite*, No. 237890, slip op. at 1.

Petitioner, through counsel, presented the following four issues in his direct appeal to the Michigan Court of Appeals:

---

[1] The court notes that this Trial Transcript (June 6, 2001) (docket no. 37), is unnumbered. However, it is sequentially Trial Transcript XII.

I.      Should [petitioner's] convictions be reversed because the trial court's denial of the motion to dismiss based on a speedy trial violation of the interstate agreement on detainers was in error?

II.     Should [petitioner's] convictions be reversed because the trial court abused its discretion when it denied [petitioner's] request for new counsel, forcing him to defend himself, without informing him of the hazards of self-representation and denied the motion for a *Ginther* hearing?

III.    Is [petitioner] entitled to resentencing where the sentence imposed is not proportional and based on an inaccurate presentence investigation report?

IV.     Should [petitioner's] convictions be reversed because the trial court improperly limited cross-examination of witnesses, including his own testimony, denying his right of confrontation?

*See* Brief on Appeal (docket no. 41).

While the case was pending on appeal, petitioner moved for a new trial.  Motion Trans. (docket no. 40).  The motion was denied.  *Id.*

Then, petitioner raised eleven additional issues in his 124-page supplemental *pro se* ("standard 11") brief (in his words):

I.      Should [petitioner's] conviction be reversed because the cumulative effect of errors by the Ohio Department of Corrections and Kent County (Michigan) prosecutor resulted in the denial of [petitioner's] protection of the interstate agreement of detainers?

II.     Should [petitioner's] conviction be reversed because the cumulative effect of errors by the Ohio Department of Corrections, the Marion Ohio Court of Common Pleas, the Kent County Prosecutor, and Kent County Sheriff caused [petitioner] to be kidnaped from the State of Ohio and tried by a court with no jurisdiction.  Also [petitioner] was denied the protection of the interstate agreement of detainers and extradition laws?

III.    Should [petitioner's] conviction be reversed because he was denied his stated and federal constitutional right to the effective assistance

of counsel, thus, violative of his state and federal constitutional right to a fair trial?

IV.    Should [petitioner's] conviction be reversed because [petitioner] was during trial dressed in Ohio prison clothes?

V.    Should [petitioner's] conviction be reversed because of the trial court's cumulative effect of errors, lies and denials was thus violative of [petitioner's] state and federal right to a fair [trial]?

VI.    Should [petitioner's] conviction be reversed because the trial court did not instruct the jury on sexual intent or fourth-degree criminal sexual conduct as a factually included offense of third-degree criminal sexual conduct?

VII.    Should [petitioner's] conviction be reversed on M.C.L. § 769.11 subsequent felonies and M.C.L. § 750.520(f) sex offender second or subsequent offenses because the prior cases used to convict were constitutionally infirm, not allowed under M.C.L. § 780/601 interstate agreement on detainers or M.C.L. § 750.520(f) sex offender second or subsequent offenses?

VIII.    Should [petitioner's] conviction be reversed because the trial court had no jurisdiction to sentence [petitioner] as Michigan law is conflicting as to if [petitioner] could be sentenced.  This error includes prosecutor misconduct.

IX.    Should [petitioner's] conviction be reversed because on March 12, 2002 the Kent County Sheriff and the Kent County Prosecutor did in conspiracy with the Ohio Department of Corrections commit the crime of kidnap and assault and battery on [petitioner].  This also included a violation of the separation of powers doctrine and the due process clauses of the United States, Michigan and Ohio Constitutions.

X.    Should [petitioner's] conviction be reversed because [petitioner's] right to effective assistance of counsel was denied by the trial court. [Petitioner] is before the Appeal Court with ineffective assistance of Appeal Counsel requiring the granting of relief as could be given by the Court of Appeals.

XI.    Should [petitioner's] conviction be reversed because the prosecutor did in their appellee's brief try to mislead the Appeal Court by not stating the true factual record or including exhibits in their appendix?

"Defendant-Appellant Pro-Per Brief on Appeal" (docket no. 41).  The Michigan Court of Appeals affirmed the conviction.  *People v. Melvin Eugene Barhite, Jr.*, No. 237890.  The court also denied petitioner's motion for reconsideration.  *Id.* (July 16, 2004).

Petitioner raised the same issues in his delayed application for leave to appeal to the Michigan Supreme Court, along with three "New Issues":

    I.    Leave to appeal to the Supreme Court should be granted because the Appeal Court did reject eight issues in the Standard 11 Brief.  The court said [petitioner] argues the same as counsel.  True.  [Petitioner] had a court order to do so.  [Petitioner] was denied his appeal of right by the Appeal Court's rejection of its own order.

    II.    Leave to appeal to the Supreme Court should be granted because the Appeal Court Clerk refused to allow [petitioner] to file a motion under MCR 7.216(C)(1)(B) telling the court the briefs from appeal counsel and appellee were complete lies at Issue I [and] completely misrepresented the facts.  Appellee brief may even contain a forged paper.  This is a separation of powers violation of the constitution.

    III.    Can a Michigan Sheriff with help of the prosecutor kidnap an Ohio inmate/resident from the State of Ohio with no I.A.D.  no extradition hearing.  Can the Ohio Department of Corrections change a judicially imposed sentence to allow this to take place [and] help?

Application for leave to appeal (docket no. 42).  The Michigan Supreme Court denied the application.  *People v. Barhite*, No. 126398 (Mich. March 29, 2005).

Now, petitioner has raised nine issues in his petition seeking federal habeas relief (in his own words):

    I.    This issue is about the interstate agreement on detainers and that defendant should have had his charges dismissed on Day 256.  There were no recorded delays.

    II.    This issue is about the fact the court denied defendant counsel and that counsel was ineffective when counsel did not do anything or communicate with defendant.

III.   This issue is about that defendant was tried in Ohio prison clothes and that defendant's pants fell down during trial, defendant was prejudice also defendant's medical condition at trial prejudice defendant (cancer).

IV.   This issue is about defendant's sentencing.  The court did not have jurisdiction to sentence defendant and other sentencing issues.

V.   Defendant's conviction should be reversed because on March 14, 2002 the Kent County Sheriff and Kent County Prosecutor did in conspiracy with the Ohio Department of Corrections commit the crime of kidnap and assault and battery on the defendant.  This also included a violation of the sepration of powers doctrine and the due procedd cluses of the United States, Michigan and Ohio Constitution.

VI.   This issue is about the fact defendant's conviction should be reversed because the trial court did not instruct the jury on sexual intent or forth degree criminal sexual conduct as a factually included offense of third degree criminal sexual conduct.

VII.   This is about the fact defendant's conviction should be reversed because the prosecutor did in their appellee brief try to mislead the appeal court by not stating the true factual record or including complete exhibits in their appendix.

VIII.   This is about the fact defendant's conviction should be reversed because the Appeal Court did reject eight issues in the Standard 11 Brief.  The Court said defendant argues the same as counsel.  True defendant had a court order to do so.  Defendant was denied his appeal of right by the Appeal Courts rejection of its own order.

IX.   Defendant's conviction should be reversed because the trial court improperly limited cross-examination of witnesses including his own testimony, denying his right of confrontation.

Petition (docket no. 1).[2]

---

[2] In his "Attachments and Memorandums No: 1 to 11" (docket no. 5), petitioner raises two additional issues (X and XI) as well as three "New Issues."  These five new issues are not set forth in the habeas petition and will not be considered as part of this action.

## II.      Unexhausted habeas claims (Issues VII and VIII)

The court previously concluded that petitioner's Issues VII and VIII were unexhausted and stayed this proceeding to allow him to present the unexhausted claims to the state courts. *See* Order (Feb. 13, 2009) (docket no. 60). Petitioner appealed this order to the Sixth Circuit Court of Appeals, which dismissed the appeal. *See Barhite v. Caruso*, No. 09-1313 (6th Cir. April 23, 2009) (Order dismissing appeal). Then, petitioner appealed the order to the district judge, who ordered the case re-opened, ordered petitioner to initiate a state court action to present his unexhausted claims within 30 days, and further ordered that the court would proceed to review only the unexhausted claims asserted in the petition if petitioner failed to comply with this deadline. *See* Order (Dec. 17, 2009) (docket no. 81). There is no record that petitioner presented his unexhausted claims to the state courts. Petitioner did file another appeal with the Sixth Circuit Court of Appeals, which dismissed the appeal for lack of jurisdiction. *See Barthite v. Caruso*, No. 10-1091 (6th Cir. March 25, 2010) (Order dismissing appeal). Petitioner has failed to exhaust address Issues VII and VIII. Pursuant to the Court's order of December 17, 2009, these claims are deemed waived.

## III.      Procedurally defaulted habeas claims (Issues III and VI)

Respondent contends that petitioner's Issues III and VI are procedurally defaulted and not subject to federal habeas review. The court agrees. The Michigan Court of Appeals did not address the merits of the claims raised in Issues III and VI, finding that petitioner had waived any claim of error as to these issues.

With respect to the claim of error raised in Issue III (wearing prison clothing during trial), the court determined as follows:

> [D]efendant argues he was denied a fair trial by being forced to wear prison clothing. The record reflects that defendant wore a light blue shirt and dark blue pants, which

the trial court described as not being obvious prison garb but rather appeared to be workman's clothing.  Further, it appears defendant chose his own clothing, and defendant's own interrogation of witnesses highlighted he wore the same clothing while incarcerated in Ohio.  We conclude defendant has waived any claim of error because it is based on conduct to which he contributed by plan or negligence.  *People v. Griffin*, 235 Mich.App 27, 46, 597 NW2d 176 (1999).

*Barhite*, No. 237890, slip op. at p. 5.

With respect to the claim of error raised in Issue VI (jury instruction), the court determined as follows:

Next, defendant claims that the trial court erred by not instructing the jury that third-degree CSC required proof of penetration for a "sexual purpose." Defendant waived any claim of error when counsel expressed satisfaction with the trial court's instructions and when the trial court repeated its instructions, counsel affirmed the instructions were accurate.  *People v. Carter*, 462 Mich. 206, 215; 612 NW2d 144 (2000).  Moreover, it is settled that third-degree CSC is a general intent crime requiring proof only that defendant committed the proscribed act.  *People v. Corbiere*, 220 Mich.App 260, 266; 559 NW2d 666 (1996).

*Id.*

"It is the rule in this country that assertions of error in criminal proceedings must first be raised in state court in order to form the basis for relief in habeas."  *Breard v. Greene*, 523 U.S. 371, 375 (1998).  Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Not every state

procedural rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

The Michigan Court of Appeals held that petitioner, through choosing to wear prison clothing at trial, waived his right to contest the verdict on the ground that the jury saw him in prison clothing.  Because petitioner waived this claim of error under state law, the Michigan Court of Appeals did not review the claim.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) ("[i]f a habeas corpus petitioner is barred from presenting one or more of his claims to the state courts because of procedural default, he has waived those claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error").  The rule applied in this case was firmly established in Michigan at the time of petitioner's trial in 2001.  *See Harrigan v. Ford Motor Company*, 159 Mich. App. 776, 786, 406 N.W.2d 917, 921-22 (Mich. App.1987) ("it is 'elementary' that '[e]rror to be reversible must be error of the trial judge; not error to which the aggrieved appellant has contributed by planned or neglectful omission of action on his part'") *quoting Smith v. Musgrove*, 372 Mich. 329, 337, 125 N.W.2d 869 (1964).

Petitioner also waived his ability to claim error with respect to the jury instruction when his counsel twice expressed satisfaction with the instruction as given.  Under Michigan law, counsel's expression of satisfaction with a court's action constitutes a waiver, which  is defined as

the "intentional relinquishment or abandonment of a known right." *People v. Carter*, 462 Mich. 206, 215, 612 N.W.2d 144 (2000). Petitioner's waiver of these two alleged errors amounts to a procedural default for purposes of federal habeas review, because in each case the appellate court was barred from considering the merits of these claims.

Furthermore, even though the state court provided limited review of the issues raised, petitioner's failure to object is still considered a procedural default. *Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default). "[A] state court's plain error analysis does not save a petitioner from procedural default. Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citations omitted). Accordingly, petitioner's issues III and VI are procedurally defaulted.

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Petitioner has failed to demonstrate cause for his waiver of these errors.

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*,

501 U.S. at 750.   In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Id*. at 329.  *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 at *3 (6th Cir. Dec. 19, 2000)  ("in order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him").  Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.

Petitioner offers no such new evidence that he is actually innocent of the crimes for which he was convicted.  Accordingly, petitioner has failed to meet the fundamental miscarriage of justice exception.  Having failed to meet the exception under *Coleman*, petitioner's Issues III and VI are procedurally barred and not subject to habeas review.

## IV.    Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in

federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Here, petitioner has exhausted the issues raised in his amended petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and  demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*,  -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted).  "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts."  *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir.  2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but

unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV.  Discussion

### A.  Petitioner's conviction resulted from a violation of the Interstate Agreement on detainers (Issue I)

Petitioner claims that he was tried and convicted in violation of the Interstate Agreement on Detainers (IAD). *See* M.C.L. § 780.601. The IAD, is an agreement among 48 states, the District of Columbia, and the United States Government, which enables a participating state to gain custody of a prisoner being held in another jurisdiction to try him on criminal charges. *Reed v. Farley*, 512 U.S. 339, 341 (1994). "The IAD is intended to act as a vehicle for cooperation between the states, including the federal government, to prevent prejudice to prisoners by promoting speedy trials when charges are pending in other jurisdictions." *People v. Jones*, 192 Mich.App. 737, 741-42, 482 N.W.2d 207 (1992).

12

The record reflects that petitioner was incarcerated in Ohio when the Kent County Prosecutor requested that he be brought to Michigan for trial. Under the IAD, when one state lodges a detainer against another state's prisoner, the prisoner may request that the charges be disposed of within 180 days of his request:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . .

M.C.L. § 780.601, Art. III(a). In effect, when a prisoner makes such a request, he is asking to be sent to the charging state and tried within 180 days, rather than waiting until the completion of his current sentence.

The IAD also provides that the charging state may seek to transfer a prisoner of another member state in order to prosecute the prisoner for outstanding charges. As a general rule, when a state seeks a transfer, it must try the prisoner within 120 days of his arrival in that state or the charges will be dismissed:

> The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated . . .

> *       *       *

> In respect of any proceeding made possible by this Article, trial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel

being present, the court having jurisdiction of the matter may grant any necessary or
reasonable continuance.

*         *         *

     If trial is not had on any indictment, information or complaint contemplated
hereby prior to the prisoner's being returned to the original place of imprisonment
pursuant to Article V(e) hereof, such indictment, information or complaint shall not
be of any further force or effect, and the court shall enter an order dismissing the
same with prejudice.

M.C.L. § 780.601, Art. IV(a), (c), (e).

     On August 11, 2000, petitioner signed a request for counsel "for purposes of any

proceedings preliminary to trial which may take place before his delivery to the jurisdiction in which

the indictment, information or complaint is pending."  *See* Form II, Interstate Agreement on

Detainers, attached to the government's appellate brief as Appendix B (docket no. 41).  However,

petitioner did not sign the request for final disposition of the "indictment, information or complaint"

pending in Kent County, Michigan. *Id.* ; M.C.L. § 780.601, Art. III(a).  Furthermore, petitioner has

presented the court with a copy of a note, dated August 19, 2000, in which he admits that he did not

sign "the forms."  *See* Form II, Interstate Agreement on Detainers.[3]

     Petitioner challenged his transfer to Kent County in a Ohio state habeas proceeding.

*See Melvin Eugene Barhite v. John Morgan*, No. 01-cv-0036 (Ct.. of Common Pleas of Marion Co.,

Ohio) (Judgment Entry Feb. 12, 2001), attached to defendant's appellate brief as Appendix E

---

[3] The note states as follows (in petitioner's words):

"Now that I have been to the law library I'll sign the forms, but only if you fix them You
said there felonys.  No.  Only one is.  And three  misdemeanors "<u>FIX THIS</u>"  If you don't
Can I send the set I got from you?  I'll fix them first

*See* Exh. 38 (docket no. 5).

14

(docket no. 41).  During that proceeding, the trial judge found that petitioner did not sign the request to return to Michigan:

> Mr. Barhite further testified that he was requested to sign a waiver of extradition or request for custody, but that he declined because he had no understanding of the process or procedures.

*Id.* at 1.  His state petition was denied and the Ohio court ordered petitioner to be remanded to the temporary custody of Kent County, Michigan and its agents, "to be brought to trial in accordance with the Interstate Agreement for Detainers."  *Id.* at 3.

At petitioner's sentencing in Michigan in July 2001, the trial judge reviewed the IAD issue once again and noted that while the Kent County Prosecutor served the appropriate papers on the institution and that petitioner was informed and signed the portion of the form requesting an attorney, "he didn't sign the part which waived extradition and agreed to come here and asked to be tried within 180 days."  Sent. Trans. (July 20, 2001) at 3-4 (docket no. 39).  After concluding that "there never was a demand to be brought here within 180 days," the trial court determined that there was no problem under the IAD.  *Id.*

The  record on this issue was summarized by the Kent County Circuit Court at the hearing on petitioner's motion for a new trial, which provided in pertinent part as follows:

> The defendant, it appears from the order of Judge Rogers, of Page 1, refused to sign certain documents related to the extradition and waiver process.  It appears from the documents that rather than sitting about and not doing anything regarding the transfer of this defendant from the State of Ohio to the State of Michigan, the authorities who were attempting to prosecute Mr. Barhite for the offenses for which he was eventually convicted by a jury in this county were, to the contrary, seeking steadfastly and steadily to have him brought to this state to answer for these offenses. It appears that the defendant did not sign all of the waiver documents necessary in order to facilitate his transfer and, as a result, his transfer to the State of Michigan was delayed significantly.
>
> Defendant -- it appears that on August 11th, 2000, Kent County authorities did place a retainer on the defendant. . .

The defendant did not sign the request to be returned to Michigan for disposition of all these outstanding charges. . .

On September 6th, 2000, Kent County authorities made a request for the temporary custody of this defendant.

The defendant filed applications for a writ of habeous [sic] corpus in state and federal court on February 1st, 2001, challenging the right of Michigan authorities to obtain custody of him. On February 12, 2001, the defendants request for relief under the habeous [sic] corpus statute, or writ, was denied by the Ohio State Court. Defendant was shortly thereafter transferred to the State of Michigan, and his trial commenced on May 21st, 2001.

*       *       *

The delays attributable to his transfer to the State of Michigan are not the fault of the State of Michigan or the prosecuting attorney or the authorities who are bound by the requirements of the compact, but, rather, to the defendant himself not signing the paperwork and with subsequent challenges in the state and federal courts.

That being the case, it appears from the record, albeit no transcripts, but still the record in the case, by the defendant's own hand, that any periods of time of delay up until February 12, 2001 are delays not attributable to the State of Michigan, but, rather, attributable to the defendant.

That being the case, upon his arrival in Michigan and his trial 99 days hence, it appears to this Court that the requirements of the Interstate Agreement on Detainers, requiring a trial within 120 days of when you arrive in the state and within 180 days that are not attributable to the defendant, has been satisfied in this case, and as a result, his request for relief . . . and again renewed in this motion for new trial is denied.

Motion Trans. (Sept. 15, 2003) at 16-18 (docket no. 40).[4]

The Michigan Court of Appeals addressed this issue as follows:

The first issue is whether the trial court erred when it denied defendant's motion to dismiss based on a violation of the Interstate Agreement on Detainers (IAD), MCL 780.601. Statutory interpretation is a question of law that we review

---

[4]Even if petitioner had requested a disposition subject to the 180-day time period, he waived his right to a speedy disposition, or at the very least caused the delay of his trial, when he filed a habeas action contesting his transfer to Kent County. *See United States v. Eaddy*, 595 F.2d 341, 344 (6th Cir. 1979) (a prisoner can waive his rights created under the IAD).

de novo. *People v. Riggs*, 237 Mich. App 584, 587; 604 NW2d 68 (1999). We review the trial court's findings of fact for clear error. *People v. Gilmore*, 222 Mich.App 442, 459; 564 NW2d 158 (1997).

Defendant was not denied a speedy trial under the time limitation provided for in the IAD. Although a detainer was placed on defendant on August 11, 2000, defendant never signed a request for final disposition of the charges in Michigan. Under the IAD, a prisoner must serve notice of his place of imprisonment and request final disposition of pending charges in another state in order to activate the 180-day time limit within which a prisoner must be tried. MCL 780.601, art III(a); *People v. Gallego*, 199 Mich. App 566, 575; 502 NW2d 358 (1993). Defendant never signed the request for final disposition; therefore, he could not invoke the 180-day time limit under MCL 780.601, art III(a).

It was the Kent County Prosecutor, and not defendant, who requested defendant's transfer. Under MCL 780.601, art IV(c), when it is the prosecuting officer who requests the transfer, a defendant has 120 days from the time he arrives in the receiving state for his trial to commence. In this case, defendant arrived in Michigan on February 19, 2001, and trial began on May 21, 2001, ninety-one days later. Because trial commenced within 120 days of defendant's arrival in Michigan, the trial court correctly denied defendant's IAD challenge.

*People v. Barhite*, No. 237890, slip op. at 1-2.

Violations of the IAD are subject to Federal habeas review in limited circumstances.

In *Reed v. Farley*, 512 U.S. 339 (1994), the Supreme Court stated that:

While the IAD is indeed state law, it is a law of the United States as well. *See Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985) (§ 2254 case, holding that the IAD "is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction"); *Cuyler v. Adams*, 449 U.S. 433, 438-442, 101 S.Ct. 703, 707, 66 L.Ed.2d 641 (1981) ("congressional consent transforms an interstate compact ... into a law of the United States").

*Reed*, 512 U.S. at 347. While acknowledging that the IAD is a federal law subject to a federal habeas action under § 2254, the court further stated that "habeas review is available to check violations of federal laws when the error qualifies as a fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Id.* at 348 (internal quotation marks omitted). The Supreme Court ultimately held

"that a state court's failure to observe the 120-day rule of IAD Article IV(c) is not cognizable under § 2254 when the defendant registered no objection to the trial date at the time it was set, and suffered no prejudice attributable to the delayed commencement." *Id.* at 342, 347. Thus, "[w]hen a defendant obscures Article IV(c)'s time prescription and avoids clear objection until the clock has run, cause for collateral review scarcely exists." *Id.* at 349.

In *Smith v. Elo*, 23 Fed. Appx. 310 (6th Cir. 2001), the Sixth Circuit noted the limitations in reviewing an alleged IAD violation under § 2254:

> Insofar as it is a congressionally sanctioned compact within the Compact Clause of the United States Constitution, U.S. Const. art. I, § 10, cl.3, the IAD is a federal law subject to federal construction. *See Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985). Federal habeas review of alleged IAD violations is limited, however, to errors constituting a "fundamental defect" resulting in a "complete miscarriage of justice" or "an omission inconsistent with rudimentary demands of fair procedure." *Reed*, 512 U.S. at 348, 114 S.Ct. 2291 (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)); *see also Metheny v. Hamby*, 835 F.2d 672, 674 (6th Cir.1987) (holding that alleged violation of the IAD's "trial-before-return" provision was not cognizable on federal habeas review, absent exceptional circumstances not present in the case).

*Smith*, 23 Fed. Appx. at 315. *See also*, *Wilbon v. Romanowksi*, No. 07-12780, 2010 WL 3702580 at *7 (E.D. Mich. Aug. 20, 2010) (applying the *Reed* "fundamental defect" standard).[5]

Here, the Michigan Court of Appeals found that the 180-day time limit did not apply because petitioner did not sign a request for final disposition under the IAD. *People v. Melvin*

---

[5] In *Wilbon*, the court, being faced with the issue of determining the appropriate standard of review for an IAD claim in a federal habeas action, included the following footnote (with which the undersigned agrees):

> Other Sixth Circuit authority would appear to say that a violation of the IAD is not cognizable on habeas review under any circumstances. *Browning v. Foltz*, 837 F.2d 276, 283-84 (6th Cir.1988). However, to the extent that the subsequently decided *Reed v. Farley*, 512 U.S. 339, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) establishes a different standard for an IAD claim, the *Reed* standard controls.

*Wilbon*, 2010 WL 3702580 at *7, fn. 1.

18

*Eugene Barhite, Jr.*, No. 237890, slip op. at 1.  *See Fex v. Michigan*, 507 U.S. 43, 52 (1993) ("the 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him").  The state court's determination that petitioner failed to execute a document is a determination of a factual issue that is presumed to be correct.  28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous.  *Magana*, 263 F.3d at 546-47.

Despite his failure to comply with the IAD, petitioner contends that he is entitled to relief because the Kent County Prosecutor (William A. Forsyth) used the wrong form in processing the detainer, i.e., that the prosecutor executed a Form VII on September 6, 2000 (rather than a Form V).  *See* Exh. 36 (docket no. 5).  The Form VII is entitled "Prosecutor's acceptance of temporary custody offered in connection with a prisoner's request for disposition of a detainer," and states that it "should be used only when an offer of temporary custody has been received as the result of a prisoner's request for disposition of a detainer."  *Id.*  The form further states:

> In response to your letter <u>N/A</u> and offer temporary custody regarding <u>Melvin Eugene Barhite (393359)</u> who is presently under indictment, information, complaint in the <u>Kent County</u> [sic] of which I am <u>Prosecuting Attorney</u>, please be advised that I propose to bring this person to trial on the indictment, information or complaint named in the offer within the time specified in Article III(a) of the Agreement on Detainers.

*Id.*

It appears that the Kent County Prosecutor's Office may have used an incorrect form, because  "Form VII" contemplates that petitioner requested disposition of the detainer.  However, the prosecutor's use of a "correct" or "incorrect" form is not dispositive.  *See, e.g., United States v.*

*Small*, 209 F. Suppl 2d 1114, 1119 (D. Colo. 2002) ( " The use of the correct or incorrect detainer form by the U.S. Marshal's Service does not determine the applicability of the IAD in this or any other case.  To hold otherwise would make the applicability of the IAD wholly contingent upon the fortuitous selection of a particular piece of paper by a U.S Marshals Service employee.") (footnote omitted).  Regardless of whether the Kent County Prosecutor used the correct form to request petitioner's appearance in Michigan, petitioner cannot claim the benefit of the 180-day time period unless he successfully requested a final disposition of the charges pending against him in Kent County (which he did not).

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

## B.     Petitioner's claims against the trial court and his trial counsel (Issue II)

### 1.     Trial court's errors regarding appointment of counsel

Next, petitioner claims that the trial court erred when it denied his request for new trial counsel and failed to properly advise him of the dangers involved in self-representation. On the first day of trial, petitioner moved to replace his appointed counsel.  Trial Trans. I at p. 3.  Petitioner wanted "to dismiss" his counsel (Mr. Johnson), claiming that counsel did not visit him in jail and never talked to him about a witness list.  *Id.* at pp. 3-5.  In addition, petitioner wanted his counsel to find the names of some witnesses and to deal with a search warrant that was served in Ohio.  *Id.* at pp. 5-6.  Petitioner stated that he wrote to the Michigan State Bar Association and grieved his counsel.  *Id.* at p. 6.  With respect to the search warrant (which did not appear related to the

20

Michigan prosecution), the court noted that petitioner's counsel could not litigate the validity of that out-of-state warrant. *Id.* Attorney Johnson represented to the court that he asked petitioner for the names of witnesses at the time of the preliminary hearing, but never received any names from petitioner. *Id.* at p. 10. In response to this representation, petitioner told the judge that he had eleven individuals, but he did not know the last names of some of the witnesses. *Id.* In deciding petitioner's request to replace counsel, the trial court noted that petitioner did not comply with counsel's previous request to furnish the names of witnesses. *Id.* at p. 14. After observing that petitioner's counsel was a very capable lawyer, the trial court denied petitioner's request to replace counsel. *Id.* at pp. 14-15.

Petitioner also expressed his desire to act as "co-counsel" with his appointed counsel. Trial Trans. I at p. 113. Specifically, petitioner wanted the opportunity to cross-examine witnesses. *Id.* The court responded that judges "appoint lawyers; we don't create co-counsels." *Id.* When the judge began to address petitioner's request to act as "co-counsel", the record reflects that petitioner interrupted the judge, stating "I am a professional at this, sir, I am not going to make an idiot out of myself." *Id.* at p. 114. The trial judge then warned petitioner of the hazards of acting as "co-counsel" and self-representation:

> THE COURT: Okay. Let me say, I'm willing to let you do that. I do want to warn you that you're not a member of the Bar. I don't know if you have any experience in trials or not. And I do want to warn you that it is entirely possible that a layperson asking questions can put his foot into it and end up helping the prosecution rather than himself. It can happen. I want you to be aware of that.
>
> It's a dangerous proposition. You may open doors that you don't know exist and allow the prosecutor to put in evidence that isn't admissible. But if you really want to do it and you are satisfied you can do it competently and help yourself, I', willing to let you do it.
>
> THE DEFENDANT: I believe I can your Honor. And I realize, yes, I'm familiar with the rape shield law. I've studied it quite a lot.

THE COURT:  So you're saying you don't want to cross-examine the [victims] but there are other witnesses you want to cross-examine?

THE DEFENDANT:  I believe, yes, I'll pass on the victims.  I'd like to, okay, if the Court would allow it, I could do it tactfully, but if it creates a problem I would pass on that.

THE COURT:  Well let's see how it goes and we'll cross that bridge when we get there.

Trial Trans. I at pp. 114-15.

The Michigan Court of Appeals addressed petitioner's claims regarding the trial court's failure to appoint new counsel as follows:

Defendant next argues that the trial court abused its discretion when it denied his request for new counsel.  Reviewing the trial court's decision regarding substitution of counsel for an abuse of discretion, *People v. Traylor*, 245 Mich. App 460, 462; 628 NW2d 120 (2001), we find no merit to defendant's claim.  A defendant must establish "good cause" and show that "substitution will not unreasonably disrupt the judicial process" in order to warrant the appointment of substitute counsel.  *People v. Mack*, 190 Mich. App 7, 14; 475 NW2d 830 (1991).  Although defendant argued that his trial counsel never contacted him before trial, trial counsel stated on the record that he had met with defendant twice before trial.  We will not substitute our judgment for that of the trial court, but will defer to the trial court's resolution of factual issues that involve questions of credibility.  MCR 2.613(C); *People v. Cartwright*, 454 Mich. 550, 555; 563 NW2d 208 (1997).  Likewise, although defendant listed several pretrial motions that trial counsel could have filed, we conclude the motions would have been futile.  A trial counsel's failure to pursue futile motions or discovery does not establish good cause.  *People v. Russell*, 254 Mich. App 11, 14; 656 NW2d 817 (2002), *lv gtd* 468 Mich. 942 (2003).  Furthermore, defendant's failure to provide trial counsel with a witness list limited trial counsel's ability to conduct discovery.  We hold that the trial court did not abuse its discretion when it denied defendant's motion to replace counsel.

Defendant also argues that the trial court failed to properly advise him of the dangers involved in self-representation.  Reviewing this unpreserved issue for plain error affecting defendant's substantial rights, *People v. Carines*, 460 Mich. 750, 763-764; 597 NW2d 130 (1999), we disagree.  While a trial court is charged with determining whether a defendant knowingly, intelligently and voluntarily chooses to give up his right to representation, such a request to dismiss counsel must be unequivocal.  *People v. Anderson*, 398 Mich. 361, 367; 247 NW2d 857 (1976).  Defendant never requested the unequivocal dismissal of his attorney; therefore, no error occurred.

22

*People v. Barhite*, No. 237890, slip op. at 2.

"The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all 'critical stages' of the criminal process." *United States v. Marrero*, 651 F.3d 453, 464 (6th Cir. 2011), citing *United States v. Wade*, 388 U.S. 218, 224 (1967). The right to counsel, however, does not guarantee that a criminal defendant will be represented by a particular attorney. *Id.* "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate 'good cause' to warrant substitution of counsel." *Id.* quoting *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir.1990).

As a general rule, the court has broad discretion in deciding whether to grant a motion for new counsel.

> The Supreme Court has held that "[t]rial judges necessarily require a great deal of latitude in scheduling trials . . . . Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay violates the right to the assistance of counsel." *Morris v. Slappy*, 461 U.S. 1, 11-12, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) (citation and internal quotations marks omitted). "[W]hen the granting of the defendant's request would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *United States v. Whitfield*, 259 Fed.Appx. 830, 834 (6th Cir.2008) (citation and internal quotation marks omitted).

*United States v. Vasquez*, 560 F.3d 461, 466-67 (6th Cir. 2009).

Here, petitioner sought to replace his counsel on the first day of trial. The record reflects that the trial court considered petitioner's claim and noted that he had not complied with counsel's request to provide information (a witness list). Under these circumstances, the trial court's action in denying the request for new counsel was entitled to extraordinary deference. *Vasquez*, 560 F.3d at 467. Finally, petitioner's claim that the trial court did not properly advise him of the dangers involved in self-representation is meritless. As discussed, the trial court explained the pitfalls that

23

could result from petitioner's plan to cross-examine witnesses.  Petitioner, who apparently considered himself "a professional" at cross-examination, chose to ignore the court's warnings.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### 2. Ineffective assistance of counsel and the *Ginther* hearing

Next, petitioner contends that his trial counsel was ineffective and the trial court failed to hold a *Ginther* hearing.  The Michigan Court of Appeals addressed these issues as follows:

> Defendant further asserts that the trial court erred in denying his motion for a hearing pursuant to *People v. Ginther*, 390 Mich. 436; 212 NW2d 922 (1973).  To establish an ineffective assistance of counsel claim, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that, but for counsel's errors, there was a reasonable probability that the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 687-688, 694; 104 S Ct 2052; 80 L.Ed.2d 674 (1984); *People v. Kevorkian*, 248 Mich.App 373, 411; 639 NW2d 391 (2001).

> Defendant argues that there was no explanation on the record as to why counsel failed to maintain contact with him, why trial counsel failed to file pretrial motions, or why trial counsel did not act.  Before the start of trial, trial counsel stated that he had met with defendant twice.  Thus, the record indicates that trial counsel did maintain contact with defendant.  We defer to the trial court's judgment on matters of credibility.  *Cartwright*, *supra* at 555.  Furthermore, while defendant identifies several pretrial motions trial counsel could have filed in this case, those suggested motions lacked merit.  Trial counsel is not required to advocate a meritless position.  *People v. Snider*, 239 Mich.App 393, 425; 608 NW2d 502 (2000).

> While defendant also argues that trial counsel "did not act," trial counsel stated on the record that defendant's failure to provide trial counsel with a list of potential witnesses limited his ability to engage in discovery.  As this Court has recognized, the failure to interview witnesses does not alone establish inadequate preparation.  *People v. Caballero*, 184 Mich.App 636, 640, 642; 459 NW2d 80 (1990).  Likewise, as the trial court recognized, trial counsel's ability to act was

further limited by defendant's decision to act as co-counsel and to conduct his own examinations and cross-examinations of witnesses at trial.

We conclude that the record fails to support an objective claim of unreasonable representation. We further conclude that defendant has failed to show that there are disputed material facts regarding his claim of ineffective assistance of counsel necessary to warrant a *Ginther* hearing. *People v. Williams*, 391 Mich. 832 (1974). We therefore hold that the trial court did not err when it denied defendant a *Ginther* hearing.

*People v. Barhite*, No. 237890, slip op. at 2-3.

### a. *Ginther* hearing

Under Michigan law, a trial court may hold a hearing on a post-conviction motion claiming ineffective assistance of counsel. *Ginther*, 390 Mich. 436. A so-called *Ginther* hearing is appropriate when the defendant's claim of ineffective assistance of counsel depends on facts not of record. *Id.* at 442-43. The trial court should take testimony if a factual dispute exists. *Id.* at 442.

The trial court's failure to order a *Ginther* hearing is not cognizable on federal habeas review:

Whether or not the Michigan courts complied with the procedural requirements of Michigan law is not a matter for the federal courts to decide on a petition for habeas relief. *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Baze v. Parker*, 371 F.3d 310, 322-23 (6th Cir.2004). The relevant inquiry is whether the state court's decision violated Petitioner's federal constitutional rights. *Baze* at 322. There is, however, no clearly established federal law announced by the United States Supreme Court that a defendant has a constitutional right to an evidentiary hearing to establish a claim of ineffective assistance of trial counsel. Accordingly, Petitioner's claim is, at most, as state law claim that is not cognizable in a habeas proceeding.

*Poindexter v. Jones*, No. 1:05-cv-833, 2008 WL 5422855 at*4 (W.D. Mich. Dec. 30, 2008).

### b. Ineffective assistance of counsel

Petitioner has raised two basic claims of ineffective assistance of counsel. First, petitioner contends that his counsel failed to contest alleged irregularities in the application of the IAD. Second, petitioner contends that his counsel failed to investigate witnesses. In *Strickland v.*

25

*Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-prong test to determine whether counsel's assistance was so defective as to require reversal of a conviction: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687. In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993). Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

### i.     The alleged errors under the IAD

Petitioner contends that this counsel failed to address certain errors committed by the Kent County Prosecutor under the IAD. As discussed, the state courts (and the undersigned) have rejected petitioner's claims with respect to the alleged errors under the IAD. Counsel cannot be found to be ineffective for failing to address these alleged errors, which lack merit. *See Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

### ii.    Counsel's failure to investigate witnesses

Petitioner contends that counsel failed to investigate witnesses to support his defense. As discussed in § IV.B.1., *supra*, the trial court investigated petitioner's claim that his counsel failed to investigate potential witnesses. After reviewing the matter with petitioner and his counsel, the

trial court observed that petitioner did not respond to counsel's request for a witness list, and even on the day of trial, petitioner could not identify all of his potential witnesses.  Based on this limited record, the court concludes that petitioner's trial counsel was not deficient.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this claim.

### C. Petitioner was sentenced on misinformation in violation of the Due Process Clause (Issue IV).

Petitioner contends that he must be re-sentenced because the trial court did not have jurisdiction to sentence him and relied upon incorrect information in the PSIR.  *See* Petition at p. 10. The Michigan Court of Appeals addressed the issue as follows:

> Defendant also argues on appeal that he is entitled to resentencing because the sentencing court relied upon inaccurate information in the report when it sentenced him and because the scoring of the guidelines was incorrect.  In cases such as this, where the legislative guidelines apply, appellate review is limited. If a minimum sentence is within the appropriate guidelines sentence range, this Court shall affirm that sentence and shall not remand for resentencing absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.  MCL 769.34(10).

> Here, there is no indication that there was an error in scoring the guidelines. At sentencing, the court reduced defendant's total prior record variable (PRV) score by five points to take into account the fact that two of defendant's previous felonies were actually high severity juvenile adjudications. But, this change in defendant's total PRV score did not change the guidelines range. For class C felonies, the minimum statutory guidelines range for a third felony offender is fifty to 150 months. MCL 777.64; MCL 777.21(3)(b). Defendant's minimum sentence of 12 1/2 years' imprisonment falls within the guidelines range.

> Defendant further argues that the trial court failed to address several inaccuracies in the presentence investigation report (PSIR).  In particular, defendant argues that he did know the ages and addresses of his children, even though that information was recorded as "unknown" under the "Marriage" section of the PSIR.

Defendant also points out that his educational level was never verified and that the "Health Evaluation" information references his father not defendant.  At sentencing, the court addressed and corrected defendant's level of education to reflect that defendant had completed two years of college.   No other inaccuracies were noted but there is no indication that the court relied upon those inaccuracies when determining defendant's sentence.  Because there was no error in scoring and because the trial court did not rely on any inaccuracies in the presentence report when determining defendant's sentence, we affirm defendant's sentence.

*People v. Barhite*, No. 237890, slip op. at 3.

These claims do not present issues cognizable under § 2254.  Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "A federal court may not issue the writ on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Federal habeas corpus relief does not lie for errors of state law, which includes the state's computation of petitioner's prison term.  *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003), citing *Estelle*, 502 U.S. at 68.  *See Austin v. Jackson,* 213 F.3d 298, 300 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).  "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'"  *Id.* at 301, *quoting Williams v. New York*, 337 U.S. 241, 245 (1949).

As an initial matter, petitioner's sentences are within the statutory limits.  Petitioner's characterization of the state trial court's application of the sentencing guidelines as a denial of due process does not transform his state law claim into a federal constitutional claim.  *See, e.g., Austin*, 213 F.3d at 301(in rejecting petitioner's claim that the trial court's departure from the sentencing guidelines violated his federal due process rights during sentencing, the court noted that petitioner failed "to articulate the grounds upon which the trial court's departure from the Michigan Sentencing

guidelines violates any federal due process right he possesses," and was "unable to substantiate a single violation of any of his constitutional guarantees to due process"); *Felicetty v. Bianco*, No. Civ. A. 02-585-JJF, 2003 WL 21402544 at *6 (D. Del. June 10, 2003) (observing that a state court's sentencing decision is generally not constitutionally cognizable, even if the claim is couched in terms of a due process violation).

To the extent petitioner claims that his inaccurate PSIR resulted in a violation of his due process rights, his claim fails. Criminal defendants have a due process right to a sentence based on accurate information. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *see also*, *Townsend v. Burke*, 334 U.S. 736, 740-41(1948). In this regard, the Supreme Court has sustained due process objections to sentences imposed on the basis of "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980), quoting *Tucker*, 404 U.S. at 447; *see also*, *Townsend*, 334 U.S. at 740-41.

> To demonstrate a due process violation "the defendant must establish that the challenged evidence is materially false or unreliable, and that such false or unreliable information actually served as the basis for the sentence." *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir.1992) (emphasis deleted) (quoting *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir.1990)). The evidence a sentencing court relies upon need only possess "some minimal indicia of reliability." *Robinson*, 898 F.2d at 1115. Unless Jones can show that he was prejudiced he has no due process claim. *United States v. Stevens*, 851 F.2d 140, 144 (6th Cir.1988).

*United States v. Jones*, 40 Fed. Appx. 15, 17 (6th Cir. 2002).

At sentencing, the trial judge reviewed the PSIR, which indicated that petitioner had a previous sexual conviction in "corrupting a minor" in Ohio back in 1999. Sent. Trans. (July 19, 2001) at p. 26. This resulted in petitioner being subject to a "second sex supp." [6] *Id.* In addition,

---

[6] "Second sex supp." refers to M.C.L. § 750.520f (sentencing for second or subsequent offenses under §§ 750.520b, 750.520c, or 750.520d), which imposes a mandatory minimum sentence of at least 5 years for second and subsequent sex offenses.

the PSIR indicated that petitioner had eight prior felonies, which satisfied the trial judge that petitioner was a third habitual felony offender. *Id.* Accordingly, for sentencing purposes, the trial judge noted that petitioner was both a third felony offender with a second sexual offender. *Id.* at pp. 26-27. The trial judge, however, adjourned the sentencing for one day, per petitioner's request for more time to review the PSIR. *Id.* at pp. 25-27.

The next day, the trial judge noted that the PSIR had an error. Specifically, petitioner had six (rather than eight) prior felony convictions as well as two prior misdemeanor convictions. Sent. Trans. (July 20, 2001) at pp. 4-5. Petitioner's counsel clarified petitioner's educational history, advising that petitioner had a high school diploma and attended college for approximately two years. *Id.* at pp. 5-6. Counsel also pointed out that under the Ohio statutory scheme, petitioner's felony convictions from 1962 and 1964 comprised a single juvenile conviction. *Id.* at pp. 6-7, 18-19. The trial judge agreed, and treated the 1962 and 1964 convictions as juvenile convictions for purposes of the sentencing guidelines. *Id.* at pp. 9-10. While petitioner gave lengthy statements in which he essentially explained his innocence, he did not address the specific errors in the PSIR. *Id.* at pp. 12-18.

In articulating the sentence imposed on petitioner, the trial judge stated his belief that petitioner was a pedophile who "has gotten off lightly many times." *Id.* at p. 28. This included being placed on probation after serving only a few weeks or months of a state prison sentence and having a ten year federal prison sentence suspended resulting in only three years of probation. *Id.* at pp. 28-29. The judge noted that the jury convicted petitioner of two counts of third-degree CSC, that he was a third felony offender and a second sexual offender. *Id.* at p. 29. This criminal history resulted in a range of between 5 and 30 years on each count. *Id.* Based on this record, the court sentenced petitioner to a term of not less than 12 1/2 years and not more than 30 years. *Id.* On the

two counts of fourth-degree CSC, with the supplemental charges, petitioner was sentenced to serve a term of not less than 1 year and not more than 4 years. *Id.* at pp. 29-30. All sentences were to be served concurrently. *Id.* at p. 30.

The record reflects that the trial court carefully reviewed the PSIR and sentenced petitioner based upon his criminal record rather than on any of the alleged mistakes in the PSIR. Petitioner has failed to show that any false or unreliable information actually served as the basis for his sentences. *See Jones*, 40 Fed. Appx. at 17. There is no due process violation in this case because petitioner's sentence was not based upon "misinformation of constitutional magnitude." *See Roberts*, 445 U.S. at 556.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim.

**D.     Petitioner was kidnaped by the Kent County Sheriff (Issue V)**

Petitioner contends that his conviction should be reversed because on March 14, 2002, the Kent County Sheriff's Department, in a conspiracy with the Ohio Department of Corrections, beat and kidnaped petitioner and brought him to Michigan. Petitioner's claim does not address his conviction, but rather addresses the method by which  he was allegedly transferred to the Michigan Department of Corrections to serve his sentence. Petitioner was properly convicted in a Michigan court in 2001, and sentenced to serve a term of imprisonment in the Michigan Department of Corrections. To the extent that petitioner claims he was subsequently "kidnaped"or "beaten" by government officials while in their custody, his recourse for this treatment would be to file a state law tort action or federal civil rights action under 42 U.S.C.  § 1983, rather than

31

incorporate those claims into a habeas petition filed pursuant to § 2254.  *See, generally, Dotson v. Wilkinson*, 329 F.3d 463, 466 (6th Cir. 2003) ("Federal habeas corpus pursuant to 28 U.S.C. § 2254 is the exclusive avenue for challenging the fact or duration of a prisoner's confinement, but civil rights actions pursuant to 42 U.S.C. § 1983 are available to challenge the conditions of that confinement, according to the Supreme Court [citing *Preiser v. Rodriguez*, 411 U.S. 475 (1973)]"). A federal habeas petition is not the proper vehicle to review petitioner's claim that he was beaten or kidnaped after his conviction.

### E.   The trial court improperly limited cross-examination (Issue IX).

Petitioner contends that the trial court violated his constitutional rights when it limited his cross-examination.  *See* Petition at p. 18.  The Michigan Court of Appeals addressed the issue as follows:

> Defendant also argues that the trial court abused its discretion when it limited his cross-examination of witnesses at trial and instructed him on the last day of trial that direct examination would be limited to one hour per witness.  Reviewing the court's conduct of trial for an abuse of discretion, *People v. Wigfall*, 160 Mich.App 765, 773; 408 NW2d 551 (1987), we disagree.  *See*, MCR 6.414(A), and MRE 611(a).

> Trial courts have discretion to limit cross-examination where questions are intended to harass, annoy, or humiliate the witness.  *People v. Sammons*, 191 Mich.App 351, 367; 478 NW2d 901 (1991).  Moreover, our Supreme Court has held that the right of cross-examination does not include a right to cross-examine a witness on irrelevant issues.  *People v. Adair*, 452 Mich. 473, 488; 550 NW2d 505 (1996).  On appeal, defendant challenges the trial court's decision to limit cross-examination testimony establishing that his Ohio neighbor was actually married to her uncle.  Because this evidence was irrelevant and because it was elicited for the purpose of humiliating this witness, the trial court did not abuse its discretion when it prohibited introduction of this testimony at trial.

*People v. Barhite*, No. 237890, slip op. at 3-4.

The Sixth Amendment's Confrontation Clause bestows upon the criminal defendant the right to confront the witnesses against him, and the opportunity to cross-examine such witnesses.

*Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006). The main purpose of confrontation is to secure for the opponent the opportunity of cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). Nevertheless, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 679. Where it is only the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. *Stewart*, 468 F.3d at 347. This judicial latitude is allowed because "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 678, quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). While an appellate court reviews a trial court's decision to limit the scope of cross-examination for abuse of discretion, *United States v. Reid*, 625 F.3d 977, 986 (6th Cir. 2010), a court performing habeas review should determine "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Stewart*, 468 F.3d at 347, quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989). "[O]nce cross-examination reveals sufficient information to appraise the witnesses' veracity, confrontation demands are satisfied." *Dorsey*, 872 F. 2d at 167, quoting *United States v. Falsia*, 724 F.2d 1339, 1343 (9th Cir.1983).

Although petitioner had counsel, he chose to cross-examine witnesses himself. The record reflects that the trial court engaged in a reasonable limitation of that cross-examination. *See, e.g.,* Trial Trans. III at pp. 76-83 (cross-examination of prosecution witness Donna Tower); and Trial Trans. IV at pp. 65-71 (cross-examination of prosecution witness Mindy Johnson). During the course of the trial, the court informed petitioner that he would be limited on cross-examining

witnesses.  *See, e.g.*, Trial Trans. III at pp. 76-83; Trial Trans. IV at pp. 67-71; and Trial Trans. V at pp. 58-64.  The court's limitations were not unreasonable.  Rather, the court issued rulings in an effort to focus petitioner's cross-examination.  Good cross-examination is an art which many amateurs mistakenly believe they can perform.  A review of the record reflects that the trial court's limitations allowed petitioner an ample opportunity to appraise the witnesses' veracity.  *Id.* Accordingly, the requirements of the Confrontation Clause were met.  *See Dorsey*, 872 F. 2d at 167.

The Michigan Court of Appeals ' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d), and petitioner is not entitled to habeas relief on this claim.

## V.     Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated:  August 3, 2012                                  /s/ Hugh W. Brenneman, Jr.
                                                        HUGH W. BRENNEMAN, JR.
                                                        United States Magistrate Judge


ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).