UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MELVIN E. BARHITE,

    Petitioner,                                     Case No. 5:06-cv-35

v                                                  HON. JANET T. NEFF

PATRICIA L. CARUSO,

    Respondent.
_____/

**OPINION**

       This is a habeas corpus petition filed pursuant to 28 U.S.C. § 2254. The matter was referred to the Magistrate Judge who issued a Report and Recommendation (R & R) recommending that this Court deny the petition (Dkt 91). The matter is presently before the Court on Petitioner's objections (Dkt 99), objections to not only the Report and Recommendation but also the Magistrate Judge's August 30, 2012 Order denying his request for counsel. In accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72, the Court has reviewed the Magistrate Judge's Order and performed de novo consideration of those portions of the Report and Recommendation to which objections have been made. The Court denies the objections and issues this Opinion and Final Order. *See* RULES GOVERNING § 2254 CASES, Rule 11 (referring to the order disposing of a habeas petition as a "final order").

       Petitioner objects to the following four determinations of law and fact made by the Magistrate Judge: (1) that he is not entitled to an attorney to help him "access this court" (Dkt 98 at 4; Dkt 99 at 2); (2) that claims VII and VIII are not exhausted (Dkt 91 at 6; Dkt 99 at 3-5); (3) that he failed

to request a speedy trial under the Interstate Agreement on Detainers ("IAD") (Dkt 91 at 12-20; Dkt 99 at 5-11); and (4) that his counsel was not ineffective for failing to address the alleged errors under the IAD (Dkt 91 at 26; Dkt 99 at 11). Petitioner also requests that the Court conduct an evidentiary hearing "to explain the unresolved facts or exhibits" (Dkt 99 at 13).

**I. Attorney Request**

In his first objection, Petitioner does not object to a portion of the Report and Recommendation but instead argues that the Magistrate Judge erred in denying his request for an attorney (Dkt 98 at 2-3; Dkt 99 at 2). Specifically, Petitioner asserts that "because my hands no longer work as to being able to depend on access to this court," he asked for a lawyer as "a reasonable accommodation to allow me to communicate with the court" (Dkt 99 at 2). Petitioner then argues that "[t]he Magistrate states it is within the discretion of the court to appoint counsel. In this case I don't think so" (*id.*).

Petitioner's objection to the Magistrate Judge's August 30, 2012 Order (Dkt 98) was untimely filed. Moreover, Petitioner's unsupported claim that he is entitled to a court-appointed attorney because he is unable to adequately communicate with this Court is without merit. As the Magistrate Judge correctly stated in the August 30, 2012 Order, "[i]ndigent habeas petitioners have no constitutional right to a court-appointed attorney" (Dkt 98 at 3) (citing *Johnson v. Avery*, 393 U.S. 483, 488 (1969); *Baker v. Ohio*, 330 F.2d 594 (6th Cir. 1964)). Furthermore, "'[t]he decision to appoint counsel for a federal habeas petitioner is within the discretion of the court and is required only where the interests of justice or due process so require'" (Dkt 98 at 3-4) (quoting *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986)).

The Magistrate Judge accurately observed that Petitioner "has filed countless pages of

pleadings, exhibits and other documents in support of his claims" (*id.* at 4). Petitioner's ability to communicate with the Court was also recently illustrated by his handwritten thirty-eight page objections and "Time Line or Brief in Support" (Dkt 99 at 1-13; Dkt 99-1 at 1-25). Accordingly, the Magistrate Judge properly determined that despite the existence of any claimed physical disability, Petitioner "continues to have access to this court," and therefore "[t]he interests of justice do not require appointment of counsel in this case" (Dkt 98 at 4). Therefore, Petitioner's argument is denied as without merit.

## II. Exhaustion of Claims

Petitioner next asserts that the Magistrate Judge erred in the Report and Recommendation in "stat[ing] [that] I did not exhaust[] claims VII and VIII" (Dkt 99 at 3). With regard to claim VII, Petitioner argues that "[i]t went to the Appeal Court. It went to the Supreme Court. It's exhausted" (*id.* at 4). Regarding claim VIII, Petitioner asserts that "[i]t went to the Appeal Court in a motion for reconsideration … Next it went to the Supreme Court" (*id.*). Therefore, he alleges that claim VIII is also exhausted. For the reasons stated herein, this objection is also without merit.

In his February 13, 2009 Order, the Magistrate Judge correctly stated that "[t]he first opportunity for a criminal defendant to address an alleged error that occurred during the state appellate proceedings … is through state collateral review under MCR 6.500 *et. seq.*" (Dkt 60 at 3) (citing *Whiting v. Burt*, 395 F.3d 602, 614 n. 7 (6th Cir. 2005); *Hicks v. Straub*, 377 F.3d 538, 558 n.17 (6th Cir. 2004)). Because "Petitioner ha[d] not yet filed his one allotted motion for relief from judgment under MCR 6.500 *et seq.*," the Magistrate Judge correctly determined that Petitioner had "at least one available remedy to exhaust [claims VII and VIII]" (*id.*). Petitioner was given an opportunity to exhaust those claims after the February 13, 2009 Order was issued, but, as the

Magistrate Judge indicated, "[t]here is no record that petitioner presented his unexhausted claims to the state courts" (Dkt 91 at 6). Furthermore, Petitioner does not assert in his objection that he filed a motion for relief from judgment under MCR 6.500 *et seq*. Accordingly, the Magistrate Judge correctly determined that Petitioner failed to exhaust claims VII and VIII, and his objections are denied as without merit.

### III. Interstate Agreement on Detainers

As reflected in the record, Petitioner was incarcerated in Ohio when the Kent County Prosecutor made the request that he be brought to Michigan for trial (Dkt 5 at 36). Under the Interstate Agreement of Detainers (IAD), "when one state lodges a detainer against another state's prisoner, the prisoner may request that the charges be disposed of within 180 days of his request" (Dkt 91 at 13) (citing MICH. COMP. LAWS § 780.601, Art. III(a)). Petitioner now argues that the Magistrate Judge erred in finding that "Petitioner did not file under the IAD MCL 780.601" (Pet'r Obj., Dkt 99 at 5; R & R, Dkt 91 at 20).

Petitioner asserts that he "filed and sent the forms for speedy trial and appointment of counsel" (Dkt 99-1 at 4), and that the prosecutor "[accepted his] request for speedy trial" (Dkt 99 at 10; Dkt 99-1 at 4, 8). Petitioner argues that based on his alleged request for a speedy trial, "the charging state had 180 days 'to start trial'" (Dkt 99 at 5) and because "the first day of trial was way past 180 days … I was to have my charges dismissed with prejudice" (*id.* at 11). Petitioner makes numerous arguments in support of this assertion in his objections to the R & R (Dkt 99) and in his "Time Line or Brief in Support" (Dkt 99-1). Petitioner's arguments are without merit.

A.  *Petitioner's Alleged Requests*

Petitioner first argues that he "sent the forms for speedy trial" on September 6, 2006 (Dkt

4

99-1 at 4). In support of this argument, Petitioner directs the Court's attention to a kite he sent on that day in which he claims "I sent a set today" (Dkt 5 at 27; Dkt 99 at 7). However, the statement in the kite fails to describe the contents of the "set" and never mentions that its purpose was to request a speedy trial. Furthermore, Petitioner fails to provide any evidence to corroborate the claim in the kite that he sent anything to anyone on that day.

Petitioner also asserts that "I filed for speed[y] trial on Sept[ember] 15, 2001, the date the prosecutor signed for my request" (Dkt 99 at 7). In support of this assertion, Petitioner cites Exhibits 3A and 3B, which contain his signature on an account withdrawal form dated September 12, 2001 and the prosecutor's signature on a return receipt dated September 15, 2001 (Dkt 51-4 at 1-2; Dkt 99 at 6). Again, this information fails to show what forms, if any, were sent by Petitioner or received by the prosecutor. Therefore, these receipts provide no evidence that Petitioner sent any forms requesting speedy trial.[1]

In addition to the fact that Petitioner fails to provide any record support for his claim that he made two speedy trial requests in September 2000, a statement he made in an October 17, 2000 kite directly contradicts his claim (Dkt 5 at 67). In the kite Petitioner sent on October 17, 2000, he states that "[i]t amazes me how you people wanted to be my legal counsel and help me ask for a speedy trial. But the minute I said, 'no' I am denied everything needed to fight extradition" (*id.*). In this statement, Petitioner is both acknowledging that he refused a speedy trial and is implying that he is

---

[1]Petitioner further cites Exhibit 43 in support of his argument that he sent forms requesting a speedy trial on September 15, 2001. This exhibit shows the same return receipt signed by the prosecutor and also shows a return receipt signed by the sheriff on September 15, 2000 (Dkt 5 at 43; Dkt 99 at 6). However, the exhibit again fails to show what documents, if any, were received by the prosecutor and the sheriff, and therefore provides no evidence that Petitioner sent a request for speedy trial.

instead interested in fighting extradition.[2] In sum, Petitioner presents no record support for his claim that he requested speedy trial.

B.     *Prosecutor's Alleged Acceptance*

In multiple parts of his objections, Petitioner also asserts that the prosecutor "[accepted his] request for speedy trial" (Dkt 99 at 10; Dkt 99-1 at 4, 8). In support of this assertion, Petitioner argues that the prosecutor's execution of a Form VII is evidence of "acceptance of [Petitioner's] request for speedy trial" (Dkt 99-1 at 4). Petitioner's assertion is incorrect.

In requesting temporary custody of Petitioner, the prosecutor filed a Form VII, titled "Prosecutor's acceptance of temporary custody offered in connection with a prisoner's request for disposition of detainer" (Dkt 5 at 36). The Magistrate Judge noted that this form instructs that it "'should be used only when an offer of temporary custody has been received as the result of a prisoner's request for disposition of a detainer'" (Dkt 5 at 36; Dkt 91 at 19). However, the Magistrate Judge further noted that the prosecutor typed "N/A" in the blank on the form where he was supposed to input information about receiving a letter and offer of temporary custody from Petitioner (*id.*).

As a result, the Magistrate Judge found that "[i]t appears that the Kent County Prosecutor's Office may have used the incorrect form" in requesting custody of Petitioner, not that the prosecutor was accepting an offer of temporary custody from Petitioner (Dkt 91 at 19). The Magistrate Judge opined that "the prosecutor's use of a 'correct' or 'incorrect' form is not dispositive" in determining the applicability of the IAD in this case (*id.* at 19-20) (citing *United States v. Small*, 209 F. Supp. 2d

---

[2]Petitioner's statement in the kite is corroborated by another document in the record signed by Petitioner which states that "I refuse my rights to a fast and speedy trial. I am aware that I will not be offered this again through the DR&C staff" (Dkt 5 at 28).

1114, 1119 (D. Colo. 2002)). The Magistrate Judge properly decided that "regardless of whether the Kent County Prosecutor used the correct form to request petitioner's appearance in Michigan, petitioner cannot claim the benefit of the 180-day time period unless he successfully requested a final disposition of the charges pending against him in Kent County (which he did not)" (Dkt 91 at 20). In sum, Petitioner's argument that he is entitled to the benefit of the 180-day IAD time period because the prosecutor "accepted" his "request" for speedy trial is without merit.

### IV. Ineffective Assistance of Counsel

Petitioner next argues that "my trial counsel did nothing to help with the IAD issue" (Dkt 99 at 11). Petitioner's argument is without merit. As the Magistrate Judge correctly stated in the R & R, "the state courts [and this Court herein] have rejected petitioner's claims with respect to the alleged errors under the IAD. Counsel cannot be found to be ineffective for failing to address the alleged errors, which lack merit" (Dkt 91 at 26) (citing *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Accordingly, the Magistrate Judge correctly determined that Petitioner's claim for ineffective assistance of counsel lacked merit, and his objection is denied.

### V. Request for an Evidentiary Hearing

Last, Petitioner requests that the Court conduct an evidentiary hearing "to explain the unresolved facts or exhibits" (Dkt 99 at 12-13). However, having determined that Petitioner's objections lack merit, the request for an evidentiary hearing is similarly denied as without merit.

### VI. Certificate of Appealability

Having determined that Petitioner's objections lack merit, the Court must further determine pursuant to 28 U.S.C. § 2253(c) whether to grant a certificate of appealability as to the issues raised.

*See* RULES GOVERNING § 2254 CASES, Rule 11 (requiring the district court to "issue or deny a certificate of appealability when it enters a final order"). The Court must review the issues individually. *Slack v. McDaniel*, 529 U.S. 473 (2000); *Murphy v. Ohio*, 263 F.3d 466, 466-67 (6th Cir. 2001).

"Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack,* 529 U.S. at 484. Upon review, this Court finds that reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. A certificate of appealability will therefore be denied.

A Final Order will be entered consistent with this Opinion.


Date: January 25, 2013                                         /s/ Janet T. Neff
                                                               JANET T. NEFF
                                                               United States District Judge